IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LUCKIE DANIELS,**
**J.D. (MINOR),**

    **Plaintiffs**

vs.    Case No. 1:23-CV-01117 JCH/LF

**LOS ALAMOS PUBLIC**
**SCHOOLS DISTRICT,**
**JENNIFER GUY,**
**JAMES CARTER PAYNE,**
**ANTONIO JAURIGUE,**
**CHRISTINE BERNSTEIN,**
**MELANIE COLGAN,**
**ELLEN SPECTER,**
**SONDRA WYMAN,**

    **Defendants**

### AMENDED COMPLAINT

    COMES NOW Luckie Daniels, minor J.D., the Plaintiffs *pro se*, and hereby submits their Amended Complaint against the Defendants in this matter. For their Amended Complaint, Plaintiffs state:

### STATEMENT OF FACTS

1. Defendant Los Alamos Public Schools District (LAPS) is a government entity situated in Los Alamos County, New Mexico.

2. Defendant Jennifer Guy is a resident of Los Alamos County, New Mexico, and is the Superintendent of the Defendant LAPS.

3. Defendant James Carter Payne is a resident of Los Alamos County, New Mexico, and is the Assistant Superintendent, Custodian of Records, and Title IX Coordinator for Defendant LAPS.

4. Defendant Antonio Jaurigue is a resident of Los Alamos County, New Mexico, and is the President of Defendant LAPS's School Board.

5. Defendant Christine Bernstein is a resident of Los Alamos County, New Mexico, and is the former Secretary of the School Board for Defendant LAPS.

6. Defendant Ellen Specter is a resident of Los Alamos County, New Mexico, and is the Vice President of the School Board for Defendant LAPS.

7. Defendant Melanie Colgan is a resident of Los Alamos County, New Mexico, and is a member of the School Board for Defendant LAPS

8. Defendant Sondra Wyman is a resident of Los Alamos County, New Mexico, and is a member of the School Board for Defendant LAPS

9. Plaintiff Luckie Daniels is a former contractor for LAPS and is the parent of a minor child who attends Los Alamos High School, a school administered by LAPS.

10. Plaintiff J.D. is a minor child who attends Los Alamos High School, a school administered by LAPS.

11. Plaintiff Daniels was initially approached by Defendant Jennifer Guy in September 2022 to facilitate the District's Equity Council work, but it is clear Defendant Guy and former Superintendent of LAPS Jose Delfin never intended to allow Plaintiff to participate in any District Equity Council-related activities.

12. Defendant Guy approved a proposal for Diversity, Equity, Inclusion, Accessibility, and Belonging (DEIAB) consulting services submitted by Plaintiff Daniels on December 27, 2022.

13. Defendant Guy did not intend to ever disclose preexisting and ongoing racism, and discrimination matters being managed by LAPS, with Plaintiff Daniels. It is clear that Defendant Guy intended to use the contract with Plaintiff to maintain appearances, given LAPS was being monitored by the Department of Education, Office of Civil Rights (OCR) for case number 08-22-1195 involving racial slurs and gestures targeting an African American minor athlete on the opposing team during a LAPS sports event. OCR determined LAPS' district investigation of Miriam Jones's complaint, the minor athlete's parent, to be insufficient, identified Title VI. violations pertaining to the District's mishandling of discrimination complaints and Nondiscrimination policy noncompliance.

14. OCR FOIA records received by Plaintiff Daniels revealed the initiated February 1, 2022 OCR complaint (08-22-1195) matter which included the OCR investigation, voluntary cooperation offered by LAPS to suspend the in-progress OCR investigation, executed Resolution Agreement, required compliance Terms, OCR identified concerns related to LAPS' district level investigation and discrimination complaint management, were not disclosed by Defendant Jennifer Guy and Defendant James "Carter" Payne to Plaintiff Daniels, either in her capacity as a contracted DEIAB consultant or marginalized Black parent with active discrimination complaints against LAPS in progress.

15. LAPS, Defendant Jennifer Guy, and Defendant James "Carter" Payne did not disclose or disseminate any information related to OCR complaint 08-22-1195 and mandated OCR Nondiscrimination policy changes to any members of the LAPS District community. Plaintiff Daniels has been unsuccessful in confirming School Board members understanding, involvement, and LAPS accountability related to this matter.

16. LAPS and its employees often treated Plaintiff with hostility. Former Superintendent of LAPS Jose Delfin frequently discussed Plaintiff with Defendant Guy. At a meeting on December 15, 2022, Defendant Guy told Plaintiff that "he believed he knew who you were" and Delfin considered Plaintiff to be a "thug" and a threat and sought to exclude her.

17. LAPS has frequently failed to properly address incidents of racism, discrimination, bias, gaslighting, and cultural negligence within its organization, including incidents directly involving Plaintiff J.D. (minor), Plaintiff Daniels' daughter.

18. From her arrival at LAPS, Plaintiff J.D. was subjected to racial and ethnic insults and slurs made by other students. Plaintiff J.D. attempted to report this ongoing issue to former LAHS Vice Principal, Mike Johnson but was unsuccessful.

19. Johnson took no action until contacted by Plaintiff Daniels, at which point Johnson and Gayle Eustis—Plaintiff J.D.'s previous counselor—met with Plaintiff Daniels to address this ongoing issue.

20. Both Johnson and Eustis acknowledged not engaging with Plaintiff J.D. and admitted there was no LAHS policy in place to address the racist and offensive language directed towards Plaintiff J.D. and other marginalized students.

21. Both Johnson and Eustis acknowledged not receiving any LAPS-provided Professional Development training to improve cultural competency development and engagement with marginalized LAPS students. Mike Johnson blamed his lack of knowledge supporting marginalized students and lack of student cultural education on the absence of LAPS guidance.

22. Following the meeting, a burdensome process for Plaintiff J.D. to report any incidents of abuse was implemented, which focused on disciplining offending students, and not cultural

competency development provided by LAPS as recommended by Plaintiff Daniels. Student punishment does not address or correct the root causes of inequity, racism, and discrimination.

23. In October 2022, Plaintiff Daniels attempted to make public comments to the LAPS District School Board to share her family's experience living in Los Alamos and to address the racial equity issues occurring at Los Alamos High School. Plaintiff provided each School Board member with over 30 printed email communications between herself, former Superintendent of LAPS Jose Delfin, and Defendant Jennifer Guy that reflected a history of parental exclusion, discrimination, denial of access to Equity Council information, and countless unanswered requests related to LAPS' handling of equity matters. Her request to put these issues on the meeting agenda was denied, and Plaintiff was afforded only two minutes of public comment.

24. Plaintiff Daniels often publicly addressed the Board, requesting intervention and that LAPS engage an equity partner to address the District's serious problems with racial equity, discrimination, and racism, which was affecting her daughter, Plaintiff J.D.

25. For 15 months, Plaintiff Daniels made multiple attempts to be heard by the Board to address racial equity issues in LAPS, and she has been ignored. No actions were undertaken by any LAPS administrator or board member to provide intervention or proper redress.

26. From October through December 2022, following Plaintiff's continued LAPS and School Board efforts to have ongoing discrimination concerns affecting both Plaintiffs Daniels and J.D. addressed, Plaintiff Daniels escalated multiple complaints of discrimination against LAPS to the Public Education Department's Anti-Racism Anti-Oppression (ARAO) Hotline. Plaintiff Daniels received no response to any complaints escalated via the ARAO system.

27. In November 2022 Plaintiff Daniels emailed PED staff members former Deputy Cabinet Secretary Vickie Bannerman and Nicole Bedford requesting Identity, Equity, and Transformation

(IET) Division support in addressing racism and discrimination issues occurring in LAPS. Plaintiff Daniels received no response from either Bedford or Bannerman.

28. In October 2022, LAPS drew community attention and what is now clear, School Board member concern, from a previously undisclosed racial slur incident during which Los Alamos Middle School football players chanted "Go back to the rez!" following a football game with Santa Fe Indian School. In NMPED IPRA documents received by Plaintiff Daniels, several School Board members, and community parents addressed the mishandling of this racial equity incident by LAPS directly with former Superintendent of LAPS Jose Delfin.

29. During this time, School Board member Ellen Specter warned Jose Delfin of potential LAPS liability and the appearance of being complicit with acts of racism, identifying the potential risk of lawsuits related to LAPS' inaction, poor communication, and mishandling of discrimination and racism incidents.

30. In November 2022, NMPED IPRA internal documents and audio recordings revealed former Superintendent of LAPS Jose Delfin discussed "racial aggressions" against Native Americans and African Americans and expressed concern they were "trending in the school district" with retired Secretary of Education and former Superintendent of LAPS Kurt Steinhaus and Vickie Bannerman.

31. NMPED IPRA documents and audio recordings revealed Secretary of Education Kurt Steinhaus directed Vickie Bannerman and her IET team to provide onsite technical assistance to LAPS in identifying racial equity concerns. During a November 18, 2022, onsite visit, PED IET, and LAPS administrators conducted student interviews resulting in the "racial re-traumatization" of LAPS students interviewed, who following the PED visit, requested counseling services.

32. Multiple NMPED IPRA internal documents and audio recordings revealed LAPS being described by Bannerman as a "community that is not inclusive, not very diverse, not very supportive of Education Acts and the work that we support surrounding inclusivity", in addition to escalations by staff to PED general counsel identifying "real harm" to LAPS students caused by Vickie Bannerman and former Superintendent of LAPS Jose Delfin during student interviews. Some student interviews appear to have been conducted with Indigenous students and without parental knowledge or consent.

33. Discrimination, bias, and racial equity complaints previously reported by Plaintiff Daniels to LAPS, Jose Delfin, and Vickie Bannerman were not addressed during the PED November 18, 2022, onsite visit and were not discussed in IPRA records shared between the PED and LAPS referenced parties. Plaintiff J.D. was not interviewed by any party.

34. Plaintiff Daniels was informed of the PED IET onsite visit by LAPS staff member Sal Zapien. Plaintiff unsuccessfully attempted to gain access to records related to the November 18, 2022, PED visit, and the multiple discrimination complaints submitted by Plaintiff via the ARAO system from October 2022 through October 2023. A partial IPRA response of the referenced public records was released to Plaintiff on December 28, 2023, and January 12, 2024.

35. LAPS and PED IET administrators and staff met via ZOOM on December 9, 2022, for a follow-up meeting in which LAPS racism and discrimination, student racial trauma, staff fallout, and mishandling of the November 18, 2022, onsite visit were discussed. A non-diverse group of (4) white, female, LAPS administrators and staff members met with PED at this time. Defendant Guy announced on the call former Superintendent of LAPS Jose Delfin was "on leave" and would not be returning to the District.

36. Although DEI information and resources were shared with LAPS by PED IET on the December 9, 2022, follow-up call, there were no further discussions and corrective measures related to the November 18, 2022, racially traumatic LAPS incident between the involved parties.

37. Neither LAPS nor PED IET ever intended to properly document, disseminate, and disclose the events, actions, and outcomes, that resulted in racialized trauma to LAPS marginalized students that occurred on November 18, 2022, to impacted students, parents, and community members in the LAPS District.

38. The shared LAPS and PED IET November 2022 actions that harmed LAPS students and left known acts of racial aggression against Plaintiff J.D. and other marginalized students unaddressed were only made public as the result of the fulfillment of NMPED IPRA response #23-312.

39. In December 2022, Plaintiff Daniels was engaged by Defendant Guy as a consultant to provide Diversity, Equity, Inclusion, Accessibility, and Belonging (DEIAB) consulting. A proposal for services was requested by Guy. Plaintiff submitted said proposal to Guy on December 27, 2022, which was approved by her without changes.

40. During the December 15, 2022, meeting, Defendant Guy disclosed that Delfin had directed several LAPS officials not to communicate with Plaintiff, and not to allow her participation in Equity Council as he viewed her as a threat to him and to the District.

41. In January 2023, Plaintiff began work as a DEIAB Strategist for the District.

42. Plaintiff did not know at the time she began work that LAPS had been mandated by the Department of Education's Office of Civil Rights (OCR) to address LAPS Title VI noncompliance specific to the mismanagement of discrimination complaints.

43. The OCR's intervention resulted from an OCR racial harassment investigation (08-22-1195) which was concealed from Plaintiff by Defendants Guy and Payne.

44. It became clear to Plaintiff, as she continued to fulfill her duties to Defendants, that Defendant Guy viewed Plaintiff the same way Delfin had: as a "thug" and a threat.

45. Despite her role as a DEIAB Strategist for LAPS, she was excluded from most interactions with LAPS staff and was not informed of discrimination incidents and complaints that were being actively addressed by Defendants Guy or Payne.

46. Throughout 2023, LAPS and its agents bristled at Plaintiff's attempts to address racial equity issues with the school which were raised by Plaintiff J.D. and would not address the root cause of racial issues at LAPS.

47. In April 2023, Plaintiff's daughter was ranked #1 in New Mexico for several categories in Track and Field.

48. On April 28, 2023, there was an instance of official misconduct—false event times being entered for a number of youth athletes—at an event that shifted one of Plaintiff J.D.'s rankings in the 100M category. The identified errors were acknowledged by both LAPS Athletic Director Ann Stewart and NMAA Assistant Director of Sports, Chris Kedge.

49. Plaintiff Daniels attempted to address the issue by submitting a parent complaint on May 1, 2023, to the NMAA directly. Following her June 2023 address to the NMAA Board of Directors, the NMAA required Plaintiff to manage her complaint through Defendant LAPS, its "member school".

50. As part of her attempts to seek redress on behalf of Plaintiff J.D., Plaintiff Daniels made Inspection of Public Records Act requests to, among other entities, LAPS regarding this incident of misconduct.

51. Those Inspection of Public Records Act requests were made on May 8, 2023, and remain only partially answered. An IPRA complaint citing this matter has been filed by Plaintiff Daniels and received by the New Mexico Attorney General's Office.

52. To date, LAPS has taken no action to assist Plaintiff Daniels or Plaintiff J.D. with respect to the NMAA complaint or to address NMAA's targeting of Plaintiff J.D. by making unfounded queries to LAPS regarding Plaintiff J.D.'s eligibility for New Mexico athletics participation.

53. LAPS did not allow Plaintiff to complete her duties as part of her consulting work. LAPS administration workers treated Plaintiff with suspicion, and Defendant Guy acknowledged that those workers acted in a discriminatory fashion toward Plaintiff.

54. LAPS and Athletic Director Ann Stewart have failed to advocate on behalf of Plaintiff J.D. to the NMAA whose online messaging, content, and promotions have blatantly omitted the athletic achievements of Plaintiff J.D., the current 4A (6) times State Champion and 2022-2023 Gatorade Player of the Year. These intentional and harmful actions impacting Plaintiff J.D. reflect bias, discrimination, and acts of retaliation.

55. In a meeting on May 19, 2023, with Defendant Guy, Defendant Payne, Davonna McQuarters, and Ashley White, Defendant Guy acknowledged she continued to "screw up" Plaintiff Daniels' DEIAB work. Defendant Guy identified her progress related to Plaintiff Daniels' 5-month consulting engagement, as she was "more aware" of racism in the District.

56. Plaintiff was excluded from participating in equity-centered district strategic analysis and planning, which would identify the lack of diverse parent engagement as an issue, despite being both an African American parent in the LAPS school district and engaged by LAPS as its DEIAB Consultant. Repeated requests to be included by Plaintiff Daniels to Defendant Guy were made.

57. In September 2023, there was an incident in which an English teacher at LAHS used a derogatory and highly offensive slur in class.

58. LAPS failed to take any corrective action and has failed to prevent racial traumas that negatively affect Plaintiff J.D. and other marginalized students from occurring.

59. LAPS has continued to retaliate against and target Plaintiff Daniels and Plaintiff J.D. since the initial filing of this lawsuit on November 27, 2023.

60. Acts against Plaintiff Daniels include harassment by Defendant Guy during a requested Film Club visit to Los Alamos High School supporting Plaintiff J.D. on December 10, 2023.

61. Defendant Guy initiated an investigation of an unreported racial slur incident by Plaintiff Daniels that resulted in Plaintiff J.D. being "interviewed" on December 20, 2023, without parental consent, being coerced by LAPS Principal Renee Dunwoody and Asst. Principal Ryan Finn to name the respective offending student and experiencing a stress-related Anxiety Attack following the incident.

62. On January 8, 2024, LAPS Director of Inclusive Schools Andrea Determan initiated email and phone contact with NAACP Santa Fe and the State office offering to provide "facts" related to Plaintiff Daniels' discrimination allegations against LAPS. Identified as a "new parent", Determan asserted that support of Plaintiff Daniels would compromise the historic Civil Rights organization and cause detrimental harm to the Los Alamos BIPOC community.

63. Plaintiff Daniels filed a LAPS 5132R Parent Grievance related to this matter on January 14, 2024. During a level 1 Zoom meeting on January 22, 2024, to address the Plaintiff's grievances against Andrea Determan, it was stated among other things, information regarding the NAACP and Plaintiff Daniels, had been provided to her by Defendant Guy.

64. Continued requests made by Plaintiff Daniels to the School Board citing 5130R LAPS Nondiscrimination Policy "Interim Actions" to protect her and her daughter, Plaintiff J.D. from multiple reported incidents of retaliation, harassment, and targeting by Defendant Guy have not been responded to.

65. On January 23, 2024, Plaintiff Daniels was informed of a recently opened investigation of Plaintiff's 2022 through 2023 discrimination complaints against LAPS, by Dr. Candice Castillo, Deputy Secretary of Identity, Equity, and Transformation. The release of additional IPRA records related to the investigation will be prepared by the IET staff and provided by PED Custodian of Records, Beverly Friedman.

66. The district-level investigation of (18) discrimination and retaliation allegations against LAPS by Plaintiff Daniels remains in progress. Completion of the investigation is anticipated by February 2024.

## CLAIM I – VIOLATION OF CIVIL RIGHTS

67. Plaintiffs repeat and re-allege the allegations of Paragraphs 1-66 above as if fully set out herein.

68. The New Mexico Civil Rights Act establishes a cause of action for any person who has suffered a deprivation of any rights, privileges, or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or a person acting on behalf of, under color of, or within the course and scope of the authority of a public body. *See* § 41-4A-3 NMSA 1978.

69. All but one of the Defendants are persons acting on behalf of, under color of, or within the course and scope of the authority of a public body—namely the Los Alamos Public School District.

70. The remaining Defendant—Los Alamos Public Schools District—is a public body.

71. The Defendants have violated Plaintiff Daniels' civil rights by engaging in an ongoing effort to exclude her from participating in certain administrative processes on the basis of race.

72. Defendants Guy and Payne were both aware of the discriminatory practices of LAPS employees and did nothing. This includes discrimination toward Plaintiff Daniels and acts that evidence racial animosity which negatively affects Plaintiff J.D., the Plaintiff's minor daughter.

73. Defendants Guy and Payne failed to address racial discrimination in LAPS, and moreover, their actions evidence an intent to protect LAPS from scrutiny for its discriminatory practices and hide the racial discrimination which is rampant in LAPS.

74. It is clear that both Plaintiffs were not treated the same as a white parent and student, and that they were denied participation in equity-related programs because of their race.

75. The New Mexico Constitution guarantees equal protection under the law. *See* N.M. Const. Art. II, § 18.

76. Defendants violated both Plaintiffs' rights under the New Mexico Constitution to equal protection under the law by denying her—on the basis of race—participation in certain programs directed toward fostering equity in LAPS.

77. Each denial of Plaintiff Daniels' request to participate in equity-centered programs and audits constitutes a separate occurrence.

78. Defendants failed to address racial discrimination in their schools, and that has caused damages to Plaintiff J.D., the Plaintiff's minor daughter.

79. Plaintiffs have incurred damages in a manner to be determined at trial.

80. The Court should award punitive damages.

81. The Court should award any attorney's fees and any costs Plaintiffs incur in bringing this action.

## CLAIM II – VIOLATION OF THE INSPECTION OF PUBLIC RECORDS ACT

82. Plaintiffs repeat and re-allege the allegations of Paragraphs 1-81 above as if fully set out herein.

83. On May 8, 2023, Plaintiff Daniels made a request to the Defendant LAPS under the New Mexico Inspection of Public Records Act, §§ 14-2-1 – 14-2-12 NMSA 1978.

84. Plaintiff's request seeks no records which are not subject to inspection under Section 14-2-1(A) – (L) NMSA 1978.

85. A partial response was provided to Plaintiff.

86. Plaintiff is entitled to inspect the records she has requested. *See* § 14-2-1 NMSA 1978.

87. Defendant LAPS did not properly or fully respond.

88. It has been more than 15 days since Plaintiff made her request.

89. The Court should award to Plaintiff all damages, costs, and fees under Section 14-2-11 – 14-2-12(D) NMSA 1978.

90. The Court should issue a writ of mandamus for the enforcement of the Act.

## CLAIM III – BREACH OF CONTRACT

91. Plaintiffs repeat and re-allege the allegations of Paragraphs 1-90 above as if fully set out herein.

92. Plaintiff Daniels had a contract with Defendant LAPS.

93. Defendants Guy and Payne actively prevented Plaintiff from fulfilling that contract and effectively terminated that contract by failing to allow Plaintiff to work as a DEIAB consultant and refusing to allow her to take any action to address the racial issues at LAPS.

94. Plaintiff has incurred damages as a result of Defendants' breach.

95. The Court should award damages to Plaintiff for breach of contract in an amount to be determined at trial.

## CLAIM IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96. Plaintiffs repeat and re-allege the allegations of Paragraph 1-95 above as if fully set out herein.

97. Defendants have created an environment of racial discrimination and animosity which negatively affects Plaintiff Daniels and Plaintiff J.D., her minor daughter.

98. Defendants have not only failed to act but acted to protect those in LAPS who engage in racial discrimination and acted to prevent any scrutiny or change to the environment at LAPS.

99. Defendants' actions were extreme and outrageous under any circumstance. To act intentionally to perpetuate and protect an environment of racism is extreme and outrageous and beyond the bounds of common decency.

100. Defendants acted intentionally. Throughout their interactions with Plaintiff, they acknowledged that discrimination was occurring, and acknowledged that certain administrative employees saw Plaintiff as a threat to the status quo and as a "thug." They acted knowingly and with a complete understanding of their actions, and what effect those actions would have.

101. As a result of their conduct, Plaintiff Daniels and Plaintiff J.D., her daughter, suffered severe emotional distress, having to endure insults and racial trauma in a racist environment that no ordinary person would be expected to tolerate.

## **DAMAGES**

102.     Plaintiffs repeat and re-allege the allegations of Paragraph 1-101 above as if fully set out herein.

103.     Plaintiffs seek compensatory damages of $158,400.00, punitive damages of $300,000.00, and pain and suffering damages of $100,000.00. New Mexico creates a damages cap for violations of civil rights at $2,000,000.00 per occurrence, and there have been several violations.

WHEREFORE, for the reasons above, the Plaintiffs request the Court grant them damages as stated above and enter a writ of mandamus requiring LAPS to allow Plaintiff Daniels to inspect the public records she requested on May 8, 2023.

Respectfully submitted,

*/s/ Luckie Daniels*
Luckie Daniels,
Plaintiff *pro se*


*/s/ J.D.*
J.D.,
Plaintiff *pro se*

Per Local Rule LR1-111(C) NMRA, this document was prepared by

PHILIP J. DABNEY, P.C.

Paul F. Geisik, Esq.
1505 15th St., Suite C
Los Alamos, NM  87544
(505) 662-3911
paul@dabneylawpc.com